[Civ. No. 22171.   Second Dist., Div. One.   July 16, 1957.]

FREBANK COMPANY (a Corporation), Appellant, v. EUGENE H. WHITE, Respondent.

Arthur J. Crowley and Horace A. Ruderman for Appellant.

Stone & Moran, Hugh A. Moran III and Willard J. Stone for Respondent.

DORAN, J.—In the trial court, defendant and cross-complainant Eugene H. White recovered judgment against the plaintiff and cross-defendant, Frebank Company, in the amount of $3,358.34, plus interest, for a balance of salary and bonus while employed by the Frebank Company in the capacity of vice president and administrative assistant to the president.

The appellant's principal contentions of appeal from the judgment are summarized as follows: "1. Is a promise to pay an indeterminate bonus, unsupported by consideration, the subject of enforcement? 2. Were the figures correctly computed in the light of the pleadings and findings."

Respondent White was employed by appellant corporation, February 1, 1954, as a result of a series of oral conversations with Fred Bankey, the president, at a salary of $650 per month, payable weekly. Respondent testified that in August or September, 1954, President Bankey proposed a system of Christmas bonuses for the personnel of Frebank Company and that the bonuses of respondent and one Wilson, amounted to $6,000, or "between $5,000 and $6,000" each.

According to the witness Wilson, President Bankey explained that Wilson and White would receive these bonuses because "Business has been good. We are fat on the goose." Mr. Bankey stated that White's bonus would be paid because, "The engineering files were set up by him. Although small and streamlined, they will enable the Frebank Company to grow many times its size because of the efficiency in the engineering setup, the files, and so forth." The president further explained that "Gene White had entree to many of the aircraft or air frame companies and to many of the influential people in them and through the introductions and connections that would be made the sales would increase, and did increase rapidly. So he felt in all fairness to Gene White he should give him a bonus the same as mine."

In August of 1954, the respondent, in obtaining an FHA house loan, was required to furnish an "Employer's Verification." This instrument, signed by President Bankey, contains the following information: "The applicant, Eugene H. White, is currently my Administrative Assistant with the specific duties outlined above. His inherent worth to the corporation is such that his tenure in the same capacity together with the addition of added responsibility, in future years, places no known limitations thereon." At Bankey's suggestion, the amount of annual bonus was given as "$4,000.00 Minimum." President Bankey denied promising any bonus but testified that "We put in (the paper) the $4,000.00" on the basis of a $400,000.00 sales potential."

Respondent White testified, as stated in respondent's brief, "that he was in fact paid a bonus of $5,500.00 on November 2, 1954, and that he left the office . . . to apply that sum on his indebtedness on his house. On his return to the office Mr. Bankey called him to his office, and stated that other employees would feel offended that respondent got his bonus ahead of the other people, and required respondent to execute a promissory note and trust deed for it, which promissory note and trust deed are still outstanding." It was stipulated that a note and trust deed in Bankey's favor was recorded. Both respondent and Bankey testified that respondent protested at receiving a Christmas bonus of only $200. Respondent remained in the employ of appellant until discharged on February 28, 1955.

The trial court resolved the various conflicts in evidence in favor of the respondent, determined that Exhibit C, the Employer's Verification hereinbefore referred to, reflected

the contract of the parties, and gave judgment for respondent for the unpaid balance due under the contract so determined.

■ The appellant's contentions are untenable. The decision in the trial court turned largely upon matters of fact, and the record discloses substantial evidence in support of the findings and judgment. The argument that the minimum bonus of $4,000 specifically set forth in a writing signed by the corporation's president was a mere "naked promise" or gratuity, not binding on the appellant, is not in accord with the facts. The testimony indicates that by reason of respondent's efficiency the company had grown "many times its size," which growth was expected to continue. "His inherent worth to the corporation," wrote the president in the Employer's Verification, "is such that his tenure in the same capacity with the addition of added responsibility, in future years, places no known limitations thereon."

No case has been cited in which the facts are similar to those herein involved. The governing principles, however, are clear enough. In *West* v. *Hunt Foods, Inc.*, 101 Cal. App.2d 597, 604 [225 P.2d 978], the reviewing court said: "The conversations with Simon and Weisman . . . can be construed either as promises . . . to pay plaintiff a pension . . . or they constituted deliberate misrepresentations to plaintiff as to the intentions of the company, intending to induce him to remain with the company. If the conversations be so construed they might well raise a promissory estoppel. ■ According to Restatement of Contracts, section 90, a promissory estoppel is defined as follows: 'A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' "

In *Chinn* v. *China Nat. Aviation Corp.*, 138 Cal.App.2d 98, 101 [291 P.2d 91], a complaint on the theory of acceptance of a unilateral contract was held good as against a general demurrer, where it alleged the employer's promise of severance pay, etc., because of which the employee remained in defendant's employment. In that case the reviewing court refers to *Hunter* v. *Sparling*, 87 Cal.App.2d 711 [197 P.2d 807], involving retirement or severance pay, and said, "We held that it was not a mere gratuity but that the adopting of the plan by the employer constituted an offer of a contract which was accepted by the employee

by continuing in the employment, and that such continuance constituted consideration requiring the plan's enforcement. We pointed out that the ruling in *Russell* v. *H. W. Johns-Mansfield Co.*, 53 Cal.App. 572 [200 P. 668], relied upon by defendants here, [as in the instant case], to the effect that similar compensation promised the employees and called a 'bonus' was without consideration and unenforceable, had been explained away, distinguished or not been followed in other California cases dealing with the same subject and was out of line with the overwhelming weight of authority."

■ The appellant charges a miscomputation of damages. As said in respondent's brief, "This is stated as a pure conclusion, and without any statement of the reasoning by which counsel for the appellant reached the result. . . . The court below found that respondent rendered services for a period of thirteen months . . . ; and that (Find. No. 4) for said services respondent was to receive a salary at the rate of $7,800.00 a year plus bonus amounting to not less than the sum of $4,000.00 annually." This brought respondent's promised compensation to a total of $12,450. The trial court found that respondent had received $9,091.66, and the difference between the sum received and that promised leaves a balance due respondent of $3,358.34, the amount awarded. The judgment is amply supported by the record and no reversible error has been pointed out.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.